**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

**SHARON R. DAVIS**                                                                  **PLAINTIFF**

v.                                            **No. 4:16-CV-00073-SWW-PSH**

**NANCY A. BERRYHILL,**
Acting Commissioner,
Social Security Administration                                          **DEFENDANT**

**RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**REASONING FOR RECOMMENDED DISPOSITION**

Sharon Davis applied for social security disability benefits with an alleged disability onset date of March 22, 2011. (R. at 27). The administrative law judge (ALJ) denied her application after a hearing. (R. at 20). The Appeals Council denied Davis' request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision, and Davis has requested judicial review.

For the reasons stated below, the magistrate judge recommends reversing and remanding the Commissioner's decision.

**I.**         **The Commissioner's Decision**

The ALJ found Davis to have the severe impairments of degenerative disk disease of the lumbar and cervical spine, sacroiliitis, and adjustment disorder with anxiety. (R. at 10). The ALJ found that Davis had the residual functional capacity (RFC) to perform sedentary work with the additional limitations that she can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; cannot climb ladders, ropes, and scaffolds; can occasionally reach overhead with her right arm; can perform simple, routine, repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes; and can have no more than incidental contact with coworkers, supervisors, and the general public. (R. at 13). Davis had no past relevant work, but the ALJ found, with supporting vocational expert (VE) testimony, that she could perform jobs such as cutter and paster, eyeglass frames polisher, or microfilm document preparer. (R. at 19). The ALJ therefore held that Davis was not disabled. (R. at 20).

II.   Summary of Medical Evidence

The evidence reflects that Davis sought chiropractic care from Russell Pearson, D.C. following a car accident in May 2006. She sought care from Dr. Pearson on twenty-four occasions from May 2006 to September 2008. (R. at 396–401). Dr. Pearson originally released Davis from his care in September 2006, but she presented again in September 2008 with complaints of left lower back pain and left hip pain. (R. at 392). Dr. Pearson ordered an MRI that was performed on October 21, 2008, which showed disk bulges at L2–3 and L3–4 with large central disk herniation at L4–5. (R. at 394).

On December 16, 2010, Davis presented to Thomas Hejna, M.D. with severe back pain. (R. at 357). Dr. Hejna referred Davis for pain management, noted complaints of vomiting every morning for a year and a lack of insurance, and diagnosed spinal stenosis at four levels, neural foraminal narrowing, a large herniated disk at L4–5, vomiting,

generalized anxiety with panic, and clinic depression. (R. at 357). He prescribed Lorcet, Xanax, and Soma. (R. at 357). Dr. Hejna opined on January 17, 2011 that Davis was totally disabled based on observation, history, and MRI readings. (R. at 356). Davis continued treatment with Dr. Hejna, who diagnosed fibromyalgia on May 12, 2011. (R. at 355). Davis underwent a cesarean section delivery on December 15, 2011 under the care of Stephen Lefler, M.D. (R. at 388–89). Davis resumed visits with Dr. Hejna on November 9, 2012. (R. at 354).

On January 20, 2013, Davis presented at St. Mary's Regional Medical Center in the emergency room to Armando Martinez, M.D., who diagnosed dermatitis of the hands. (R. at 381–82). She presented at the emergency room again on March 2, 2013 with complaints of dental pain to McLane Simpson, M.D. (R. at 379–80). She continued to visit Dr. Hejna once per month through February 2013 and twice in March 2013. (R. at 352–56). Dr. Hejna continued Davis on Lorcet, Xanax, and Soma. (R. at 352–56).

Clifford Evans, M.D. performed a physical examination on April 30, 2013. (R. at 359). Dr. Evans noted that the 2008 MRI showed three ruptured disks, that Davis could not stand due to severe pain in the right hip, and that she had severe anxiety attacks at least once per week. (R. at 359). He noted reduced forward elevation range of motion in the right shoulder, cervical spine, and lumbar spine. (R. at 361). Davis walked with a forward tilt to her upper body and could not walk on heel and toes or squat or arise from a squatting position. (R. at 362). Dr. Evans diagnosed degenerative arthritis of the lumbosacral spine; degenerative disk disease; neuropathy of the right hip and leg, S3, L4, and L5; adult anxiety disorder; and bilateral sacroiliitis. (R. at 363). Dr. Evans assessed severe limitations to the body as a whole with panic attacks and generalized anxiety. (R. at 363).

Steve Shry, Ph.D. performed a mental diagnostic evaluation on May 1, 2013. (R. at 365). He estimated that Davis functioned in the low average range intellectually. (R. at 366). Dr. Shry noted that Davis exhibited no mental or physical impairments during their brief interview that would impede Davis from handling her personal hygiene and dressing without assistance. (R. at 367). Dr. Shry stated that Davis could communicate and interact in a socially appropriate manner and communicate in an intelligible and effective manner. (R. at 367). She did not display difficulty comprehending and carrying out simple and complex tasks and did not appear limited in her ability to cope with the typical demands of basic work like tasks. (R. at 367). She often appeared to forget instructions, and Dr. Shry noted she might be mildly impaired in her ability to sustain persistence when completing tasks, but she did not seem impaired in her ability to complete work like tasks in an acceptable time frame. (R. at 367).

State agency examiners opined that Davis could perform sedentary work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling; right overhead work; and no climbing ladders, ropes, or scaffolds. (R. at 112–23, 138–50).

Davis visited Dr. Hejna again in May 2013, and he continued her prescriptions. (R. at 391). Dr. Hejna filled out a number of evaluation and assessment forms on June 10, 2013. Therein, he noted that Davis's abilities could vary from day to day but that she was totally disabled most days. (R. at 372). He assessed her as being unable to lift and/or carry any amount of weight and unable to sit continuously for more than a few minutes. (R. at 373). He opined that Davis must lay supine almost all day and is totally disabled most days. (R. at 373). Dr.Hejna checked every box on the checkbox forms assessing Davis's limitations, indicating that she has limitations in every area mentioned. (R. at 375–77). Davis visited Dr. Hejna again in July and August 2013, and

Dr. Hejna continued her Lorcet, Xanax, and Soma. (R. at 391). She visited Dr. Hejna again in January, February, and May 2014, and received prescriptions for Norco, Xanax, and Soma. (R. at 390).

On July 24, 2014, Davis presented to Ted Honghiran, M.D. for a consultative orthopedic examination. (R. at 404). Davis was pregnant and not taking medications at the time of the examination for that reason. (R. at 404). No radiology was performed due to Davis's pregnancy. (R. at 346). Dr. Honghiran observed that Davis could walk normally, could dress and undress without help, and get on and off the examining table. (R. at 404). He noted she had full range of motion in the lumbosacral spine with no pain and no muscle spasm and had negative straight leg raise tests in both legs. (R. at 404). His impression was a history of chronic low back pain from being overweight, chronic lumbosacral strain in nature. (R. at 405).

III.   Discussion

The Court reviews to determine whether substantial evidence on the record as a whole exists to support the ALJ's denial of benefits. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence" exists where a reasonable mind would find the evidence adequate to support the ALJ's decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). The Court will not reverse merely because substantial evidence also supports a contrary conclusion. *Long*, 108 F.3d at 187.

Davis argues that the ALJ failed to fully and properly develop the record, erred in determining her credibility, improperly determined the RFC, relied on erroneous VE testimony, and failed to consider the limiting effects of her obesity. As the undersigned has determined that the ALJ erred in determining Davis' RFC, Davis' other arguments need not be specifically addressed.

Davis contends that the ALJ's RFC determination tracks the determination by the State agency consultants, which do not constitute substantial evidence. She also argues that the ALJ erroneously discounted the treating physicians' (Evans and Hejna) opinions and relied upon the incomplete report of consultative physician Dr. Honghiran. Davis asserts that the ALJ rejected Dr. Hejna's opinion on grounds that it was not consistent with Davis' testimony and reports, but did not identify how his opinion conflicted with them. She also observes that the ALJ relied in part upon her lack of medication at the time of the examination by Dr. Honghiran, which related to her pregnancy at the time rather than a lack of symptoms.

The ALJ rejected the opinion of Davis's treating physician, Dr. Hejna, stating that it was "given substantial weight to the extent that it supports the residual functional capacity, but is . . . given little weight with regard to any additional limitations." (R. at 17). We note that the RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her findings as the appropriate RFC. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The error here is not in the ALJ's rejection of Dr. Hejna's findings in favor of Dr. Honghiran's findings. Rather, it is the absence of valid reasons to reject the findings of Dr. Hejna, the treating physician.

The same analysis applies to the treatment of another examining physician, Dr. Evans, who found Davis had severe limitations to the body as a whole with panic attacks and generalized anxiety. It is within the ALJ's discretion to accept portions of a

physician's findings, but the ALJ must point to proper reasons for doing so. This is particularly true when dealing with a treating physician.

The Commissioner argues that the rejection of Dr. Evans' and Dr. Hejna's opinions is justified by a lack of clinical findings in their opinions. The Court disagrees, and notes that Dr. Honghiran's opinion includes fewer clinical findings than the reports of Drs. Evans and Hejna. Dr. Honghiran only observed that Davis could walk without a limp, dress herself, get on and off an examining table, had full range of motion in the lumbosacral spine and no muscle spasm, and had a negative straight leg raise test in both legs. (R. at 404). There is no evidence of any further examination. Additionally, Dr. Honghiran's opinion contains no findings related to the cervical spine although the ALJ specifically authorized cervical and lumbar x-rays. (R. at 60). The Court notes that x-rays could not be taken because Davis was pregnant. However, Dr. Honghiran's records do not document that he performed any examination of Davis' cervical spine at all. Dr. Honghiran's examination therefore lacked findings related to one of the reasons his examination was ordered in the first place.

Dr. Evans conducted range of motion tests on all extremities as well as the cervical and lumbar spine. (R. at 361). He also tested for several postural limitations and determined that Davis could not walk on heel and toes. (R. at 362). Dr. Hejna has prescribed Lorcet, Norco, Soma, and Xanax on numerous occasions. (R. at 352–57, 390–91). Moreover, while Drs. Evans and Hejna saw Davis on multiple visits, Dr. Honghiran examined Davis only once. The ALJ concluded that if Davis' limitations were as great as alleged, she would have demonstrated greater limitations when examined by Dr. Honghiran. (R. at 17). However, Dr. Hejna noted in a Medical Source Statement that Davis' disabilities "vary from day to day and week to week." (R. at 372).

The ALJ rejected Dr. Hejna's opinion because it was inconsistent with the evidence as a whole. (R. at 18). The ALJ did not identify any specific inconsistencies, nor does the Commissioner. There are no radiological findings in the record apart from the 2008 MRI. The only evidence supporting the ALJ's decision are the opinions of the State agency consultants and the opinion of consultative examiner Dr. Honghiran. Both Dr. Evans and Dr. Hejna identified greater limitations than the limitations identified by the consultants, and their opinions are supported by an extensive treating relationship in the case of Dr. Hejna and by more extensive clinical findings in the case of Dr. Evans. Further, Davis' own testimony and her statements in the function reports paint a picture of a person with great limitations, which is consistent with the findings of Drs. Hejna and Evans. In light of the entire record, the ALJ's opinion is not supported by substantial evidence on the record as a whole.

## IV.     Recommended Disposition

The ALJ improperly weighed the opinions of Davis' treating physicians. The ALJ's decision is therefore not supported by substantial evidence on the record as a whole. For these reasons, the undersigned magistrate judge recommends REVERSING and REMANDING the decision of the Commissioner with instructions to recontact treating physicians and/or order consultative examinations as necessary to develop the record and to reevaluate the treating and examining physician opinions with a full explanation of the weight given to the opinions.[1]

It is so ordered this 24th day of February, 2017.

---

[1] The ALJ should also discuss Davis's obesity on remand. The current opinion contains no mention of Davis's obesity, and it should be considered.

_____
PATRICIA S. HARRIS
UNITED STATES MAGISTRATE JUDGE